IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BJ'S BAIL BONDS, INC., and ) <br> FREEDOM, INC., ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> UNITED SURETY SERVICES, ) <br> INC., and LYLE GUILLORY, ) <br>   ) <br>   Defendants. ) | CASE NO. 2:20-CV-305-WKW <br> [WO] |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion for Summary Judgment and for Attorneys' Fees. (Doc. # 19.) Plaintiffs bring several claims regarding Defendants' refusal to disburse indemnity funds that secured bail bonds issued by Plaintiffs. Defendants argue that all the claims fail because Plaintiffs never provided the necessary documentation for disbursement of the funds and because, at least for some of the funds, Defendants have no authority to disburse the funds. For the reasons stated below, summary judgment is due to be granted, but the motion for attorneys' fees is due to be denied.

### **I. JURISDICTION AND VENUE**

Subject matter jurisdiction is proper under 28 U.S.C. § 1332 and § 1441(a), as Plaintiff BJ's Bail Bonds, Inc., is an Alabama corporation with its principal place

of business in Alabama; Plaintiff Freedom, Inc., is a dissolved Alabama corporation; Defendant United Surety Services, Inc., is a Louisiana corporation with its principal place of business in Louisiana; Defendant Lyle Guillory is a citizen of Louisiana; and the amount in controversy is over seventy-five thousand dollars. The parties do not contest personal jurisdiction or venue.

## II. BACKGROUND

This action arises out of a business contract between Plaintiffs, who are bail bond agents, and Defendants, a company and officer thereof that provides general management services to bail bond agents. (Doc. # 19-2 at 2.) In their business relationship, Defendants assisted Plaintiffs in acquiring underwriting from insurance companies and served as a go-between for the insurance companies and Plaintiffs. (Doc. # 19-2 at 2.) The insurance backing was critical to Plaintiffs' business, allowing Plaintiffs to "post bond" for their customers with only an assurance of payment—called a surety bond—instead of delivering the full cash amount ordered by the court. In the event that a bonded individual later failed to appear in court, the insurance company would cover some or all of Plaintiffs' liability.

As security for this insurance obligation, Plaintiffs were required to deliver a certain percentage of the total amount of each bond to Defendants. (Doc. # 19-2 at 5.) Defendants were "in complete control of [the] indemnity fund an [*sic*] the sureties [were] not responsible or liable therefore." (Doc. # 19-2 at 5.) Defendants

2

had the discretion to withdraw money from the indemnity fund in order to provide advances to Plaintiffs, (Doc. # 19-1 at 5), or to reimburse Defendants for their costs, (Doc. # 19-2 at 5). When the bonded individual appeared in court or Plaintiff's bond liability was otherwise lifted by the court, Plaintiffs were required to report that to Defendants. (Doc. # 19-2 at 4). Once Plaintiffs provided "the court minutes showing exoneration [of the bond]" to Defendants, then the remaining portions of the indemnity fund were returned to Plaintiffs. (Doc. # 19-2 at 5.)

Defendants have fulfilled their obligation under the agreement by securing surety bonds with underwriting from, variously, Bankers Insurance Company ("Bankers"), Accredited Surety and Casualty Company, Inc. ("Accredited"), and Safety National Casualty Corporation ("Safety National"). (Doc. # 19-1 at 3.) For bonds secured by Bankers, Defendants sent the indemnity fund money to Bankers, who held the money in an account at Centennial Bank. (Doc. # 19-1 at 3.) For bonds secured by Accredited, Defendants sent the indemnity fund money to Accredited, who held the money in an account at Iberia Bank. (Doc. # 19-1 at 3.) For bonds secured by Safety National, Defendants retained the indemnity fund money in an account of Louisiana Financial Holdings, Inc., a non-bank holding company operated by Defendant Guillory. (Doc. # 19-1 at 3.) Defendants do not have control over the funds sent to Bankers and Accredited. (Doc. # 19-1 at 4.)

Plaintiffs have occasionally requested money from the indemnity funds "for personal expenses and in times of need." (Doc. # 19-1 at 5.) Defendants forwarded such requests to a representative for Bankers or Accredited if the request pertained to a bond from Bankers or Accredited. Defendants themselves reviewed requests related to Safety National bonds and occasionally provided advances in their discretion. (Doc. # 19-1 at 5.)

On February 5, 2020, Plaintiffs filed the present suit in the Circuit Court of Autauga County, Alabama. (Doc. # 1-1.) Under seven legal theories, Plaintiffs seek redress on simple allegations: "All indemnifications under the bail bond underwriting agreement were determined to be exonerated and there were none outstanding," and "Defendant has failed and refused to return the remaining indemnity funds." (Doc. # 1-1 at 2.)[1] On May 8, 2020, Defendants removed this action to federal court. (Doc. # 1.)

In July 2020 and September 2020—after commencement of this suit—Plaintiffs provided to Bankers and Accredited the required court minutes exonerating the bond liability for certain outstanding bonds from Bankers and Accredited. (Doc. # 19-1 at 4.) Plaintiffs provided a courtesy copy to Defendants.

---

[1] The Complaint lists as causes of action breach of contract, breach of the duty to return funds, trespass to chattel, failure to return upon demand, deceptive trade practices, unjust enrichment, and fraud. (Doc. # 1-1 at 2–5.) Each is premised on the above two facts. Because Plaintiffs fail to prove the underlying breach of contract, there is no need to further discuss the particularities of each theory.

4

(Doc. # 19-1 at 4.) Bankers and Accredited have processed the documents and listed the bonds as exonerated. (Doc. # 19-12.) Defendants have supported Plaintiffs in seeking disbursement of the indemnity funds associated with the exonerated bonds. (Doc. # 19-1 at 5.)

### III. STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does

not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV. DISCUSSION

### A. Motion for Summary Judgment

Defendants' primary argument for summary judgment is that all remaining indemnity funds are not subject to mandatory disbursement as Plaintiffs have never provided court minutes showing exoneration of the relevant bonds. However, Defendants also argue that a judgment against them is improper as to some of the contested indemnity funds because they no longer have possession over the funds held by Bankers and Accredited. The first reason is dipositive: without evidence that Defendants were ever provided court minutes, all of Plaintiffs' claims fail.

Plaintiffs' opposition to the motion for summary judgment is inadequate. Plaintiffs assert that the contract is "ambiguous and unclear," but do not explain how

6

the contract could be subject to multiple interpretations or how any of those interpretations support their claim. (Doc. # 20 at 3.) Plaintiffs claim that they "have provided information and documentation concerning their outstanding bail bonds' exoneration and satisfaction, (Doc. # 20 at 4), but they do not cite a specific exhibit to support that assertion. Instead, to support the most important factual point in their case, Plaintiffs simply say: "This information is attached to the Defendants' voluminous exhibit which the plaintiff will not duplicate, unless so requested by this Honorable Court." (Doc. # 20 at 4.)

Plaintiffs' response only brings forward one additional piece of evidence: an affidavit from Betty Reeves, the owner of Plaintiff BJ's Bail Bonds. (Doc. # 20-1.) In her affidavit, Reeves states:

> 3.  . . . I was required to supply the general agent with the court minutes showing exoneration, and then that portion of the indemnity/build-up fund then remaining shall be delivered to me and be clear of the agreement. . . .
>
> 4.  Guillory has disbursed funds from the indemnity/build-up fund in the past when I have provided the information to him that I have always provided. Now Guillory is requesting different information than he has in the past, and he is refusing to pay me from the indemnity/build-up fund.
>
> 5.  I have provided the necessary paperwork to Guillory for release of the indemnity/build-up fund, and he refuses to release those funds.
>
> 6.  I have spoken with the other plaintiff in this lawsuit and have been informed that she has also provided the appropriate paperwork to Guillory for release of the indemnity/build-up fund.

7

(Doc. # 20-1 at 1–2.)

Reeves's affidavit, insofar as it contains testimony regarding the contents of correspondence with Defendants, is not admissible evidence. Under the best evidence rule, the original correspondence "is required in order to prove its content." Fed. R. Evid. 1002. Without any indication that an exception to this rule applies here, *see* Fed. R. Evid. 1004, Reeves's affidavit is not the proper manner for proving that court minutes were sent to Defendants. Further, the portion of Reeves's affidavit that relays the testimony of her co-Plaintiff is inadmissible for the additional reason that it is hearsay. *See* Fed. R. Evid. 802.

At the summary judgment stage, Plaintiffs do not have to present evidence in an admissible form. *Celotex*, 477 U.S. 317, 324. However, the evidence provided by Plaintiffs is not just in an inadmissible *form*—it is inadmissible altogether. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence . . . ."). Hearsay statements in an affidavit cannot be considered at summary judgment, *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999), and the best evidence rule still retains full force at summary judgment. *Benjamin v. Thomas*, 766 F. App'x 834, 837–38 (11th Cir. 2019); *see also Hinson v. Bias*, 927 F.3d 1103, 1108 n.1 (11th Cir. 2019).

The only potentially admissible evidence that Plaintiffs rely on to support their claims can be found somewhere in "Defendants' voluminous exhibit." Defendants

speculate that Plaintiffs are likely referring to the evidence of the July 2020 and September 2020 communications with Bankers and Accredited. (Doc. # 21 at 4.) Those communications are the only locations in the record where court minutes demonstrating exoneration can be found, and they are therefore the only communications that could have mandated discharge of the indemnity funds.

However, even if Plaintiffs specifically referred to this evidence in their response, they did not provide any evidence contradicting Defendant Guillory's sworn statement that Bankers and Accredited have processed these documents and accepted them as evidence of exoneration. (Doc. # 19-1 at 4.) Plaintiffs did not provide evidence that the account records provided by Defendants are not accurate. (Doc. # 19-12 at 2.) Most critically, Plaintiffs did not provide evidence that the indemnity funds for these bonds have been withheld.

Plaintiffs' reliance on the July 2020 and September 2020 communications would be misplaced for procedural reasons as well. Plaintiffs' complaint was filed on February 5, 2020. In this action, Plaintiffs must prosecute only those claims that are contained within their complaint. If Plaintiffs' first proper request for disbursement of the indemnity fund did not occur until July 2020, then no breach could have occurred before—and therefore could not be contained within—the February 2020 complaint. Plaintiffs do not present any federal or Alabama law that

9

would justify an award of damages based on a breach of contract that postdates the filing of the complaint.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Each of Plaintiffs' claims is predicated on the allegation that Defendants have failed to disperse funds when Plaintiffs have sent them court minutes showing exoneration. The record evidence does not contain any admissible proof of this claim and therefore could not support a verdict in favor of Plaintiffs. Thus, there is no *genuine* dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

**B.      Motion for Attorneys' Fees and Costs**

The Alabama Litigation Accountability Act ("ALAA") permits the award of reasonable attorneys' fees and costs against a party to a civil action, if that party has asserted a claim or defense without substantial justification. Ala. Code § 12-19-270, *et seq.* The ALAA applies when this court is sitting in diversity and ruling under Alabama substantive law, as is the case for this action. *See Franklin v. Dean*, No. 2:11-CV-683-WKW-SRW, 2013 WL 806151, at *13–14 & n.20 (M.D. Ala. Jan. 31, 2013), *report and recommendation adopted*, 2013 WL 805376 (M.D. Ala. Mar. 4, 2013) (Watkins, J.). A claim is asserted "without substantial justification" if it is "groundless in fact or in law." Ala. Code § 12-19-271(1). Defendants request an

award of reasonable attorneys' fees and costs. (Doc. # 19 at 17.) Plaintiffs, in response, direct the court to "see Plaintiff Reeves' affidavit." (Doc. # 20 at 8.)

Plaintiffs' case is not supported by any admissible evidence. However, "[t]he phrase 'without substantial justification' is not a fancy synonym for 'unsuccessful;' rather, much more is required to prevail under the ALAA." *SE Prop. Holdings, LLC v. Rookery III*, No. CIV.A. 11-0629-WS-B, 2013 WL 69030, at *16 (S.D. Ala. Jan. 3, 2013); *see Morrow v. Gibson*, 827 So. 2d 756, 764 (Ala. 2002) ("The legal insufficiency of his position must be susceptible to a conclusion that no reasonable and competent attorney would have advanced the contention that he did.").

The existence of Reeves's affidavit, as cursory and inadmissible as its contents may be, makes the ALAA inapplicable. "Groundless in fact" does not mean "groundless in admissible evidence," and an attorney preparing a complaint can rarely anticipate that their client's testimony will not be supported by any admissible evidence. This case is dissimilar to other cases where an award under the ALAA was justified due to serious and obvious legal or factual problems. *See, e.g.*, *Meek v. Diversified Prods. Corp.*, 575 So. 2d 1100 (Ala. 1991) (plaintiff filed a lawsuit attempting to re-litigate matters decided in a prior case); *Cauthen v. Yates*, 716 So. 2d 1256 (Ala. Civ. App. 1998) (affirmed award of one-half of a father's litigation expenses when the mother maintained in the child support case that the alleged father was the only possible father of her child even after genetic tests excluded him as the

11

father); *Williams v. Capps Trailer Sales, Inc.*, 607 So. 2d 1272 (Ala. Civ. App. 1992) (plaintiff filed a lawsuit clearly barred by the statute of limitations).

Defendants cite no federal or Alabama case where attorneys' fees and costs have been awarded under the ALAA in circumstances similar to these. The Defendants' motion for attorneys' fees and costs is therefore due to be denied.

## V.  CONCLUSION

It is therefore ORDERED that Defendants' Motion for Summary Judgment and Attorneys' Fees (Doc. # 19) is GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED in favor of Defendants on all of Plaintiffs' claims, but the request for an award of attorneys' fees and costs is DENIED.

Final judgment will be entered separately.

DONE this 24th day of January, 2022.

                                             /s/   W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE